UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JACK WOODS,

                    Plaintiff,

         -against-

EMPIRE HEALTH CHOICE, INC.;
EMPIRE MEDICARE SERVICES, a Division
of Empire Health Choice Assurance, Inc.,

                    Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

05-CV-0577 (DLI)(LB)

**DORA L. IRIZARRY, U.S. District Judge:**

On February 1, 2005, plaintiff Jack Woods, acting *pro se*, brought suit pursuant to the Medicare as Secondary Payer statute, 42 U.S.C. § 1395y(b)(3)(A), against defendants Empire Health Choice, Inc. and Empire Medicare Services, a division of Empire Health Choice Assurance, Inc. (collectively, "Empire"). Plaintiff claims that Empire fraudulently withheld payments to the Medicare system, and failed to ensure that Medicare was not charged for services covered by other insurance companies.

On March 24, 2005, Empire filed a motion to dismiss in lieu of an answer for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Upon plaintiff's requests, and in consideration of his *pro se* status, the parties submitted several stipulations extending plaintiff's time to submit opposition papers to Empire's motion. The court granted three such requests, extending plaintiff's total time to respond to over four months. Plaintiff, however, failed to respond without any explanation.

1

After the court's third deadline of August 1, 2005 had expired, Empire filed a letter on September 12, 2005 requesting that its dismissal motion be deemed unopposed. The court granted Empire's application on September 13, 2005. On September 30, 2005, plaintiff filed a letter *pro se* requesting "one final extension of time" to respond to Empire's motion. The court granted plaintiff's request, vacating its September 13, 2005 order and extending plaintiff's deadline to submit his opposition papers until October 20, 2005. The court admonished plaintiff that failure to submit opposition papers by October 20, 2005 would reinstate the court's order of September 13, 2005 and render Empire's motion unopposed.

On November 1, 2005, after plaintiff again failed to comply with the court's deadline to file its opposition papers, Empire filed a letter requesting that the court reinstate its order of September 13, 2005. The court granted Empire's request the following day, on November 2, 2005. On August 4, 2006, plaintiff, with the assistance of newly-obtained counsel, filed a letter request for oral argument on Empire's motion. The court denied plaintiff's request in an order dated August 11, 2006. Plaintiff made a final request on August 15, 2006 for oral argument; however, the court denied this request as well on August 30, 2006, reiterating that the instant motion is deemed unopposed.

For the reasons set forth below, Empire's motion to dismiss is granted, and plaintiff's complaint is dismissed in its entirety.

**I.     Background**

    **A.     Medicare and the MSP Statute**

The Medicare program was established in 1965 as Title XVIII of the Social Security Act to provide health insurance benefits for persons above sixty-five years of age, persons who are disabled,

and persons with end-stage renal disease. *See* 42 U.S.C. § 1395 *et seq*. The program consists of two parts: (1) Part A, entitled "Hospital Insurance Benefits for Aged and Disabled," provides insurance coverage for hospital, related post-hospital, and home health services, as well as hospice care, *see* 42 U.S.C. § 1395c; and (2) Part B, entitled "Supplementary Medical Insurance Benefits for Aged and Disabled," is a federally-subsidized, voluntary health insurance program that provides insurance for a portion of some medical expenses excluded from Part A coverage. *See* 42 U.S.C. §§ 1395j-1395t. The Department of Health and Human Services ("HHS") contracts with "fiscal intermediaries," or private insurance companies, to administer major medical claims under the Part A program, as well as "carriers," also private insurance companies, to administer claims submitted under the Part B program. *See* 42 U.S.C. §§ 1395h(a), 1395u(a).

From its inception until 1980, Medicare generally paid for medical services whether or not the recipient was also covered by another health plan. *Fanning v. United States,* 346 F.3d 386, 388 (3d Cir. 2003) (citing Social Security Amendments of 1965, Pub.L. No. 89-97, § 1862(b), 79 Stat. 286). Beginning in 1980, however, Congress enacted a series of cost cutting amendments to the Medicare program, collectively known as the Medicare as Secondary Payer ("MSP") statute.[1] *Id*. The MSP statute was designed to "lower overall federal Medicare disbursements by requiring Medicare beneficiaries to exhaust all available insurance coverage before looking to Medicare's coverage." *Id*. at 388-39 (citing *United States v. R.I. Insurers' Insolvency Fund,* 80 F.3d 616, 618 (1st Cir. 1996)). The MSP statute achieves this objective in two ways: (1) it "bars Medicare payments where 'payment has already been made or can reasonably be expected to be made promptly (as determined in accordance with regulations)' by a primary plan," *id*. at 389 (quoting 42 U.S.C.

---

[1]The amendments have been codified in 42 U.S.C. § 1395y(b).

§ 1395y(b)(2)(A)); and (2) "when Medicare makes a payment that a primary plan was responsible for, the payment is merely conditional and Medicare is entitled to reimbursement for it." *Id*. (citing 42 U.S.C. § 1395y(b)(2)(B); *Blue Cross and Blue Shield of Texas v. Shalala,* 995 F.2d 70, 73 (5th Cir. 1993)). Both fiscal intermediaries and carriers process claims submitted by beneficiaries' health-care providers; part of their duty is to ensure that Medicare does not pay for services covered by private insurers, and to reimburse Medicare when this does occur. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 70 (2d Cir. 1998).

The MSP statute sets forth an avenue by which the United States may bring an action against a fiscal intermediary or carrier to recover payments in the event that Medicare is not properly reimbursed. 42 U.S.C. § 1395y(b)(2)(B)(iii). The statute also provides for a limited private right of action "for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). As interpreted by the Second Circuit in *Manning v. Utils. Mut. Ins. Co.*, § 1395y(b)(3)(A) allows "individuals whose medical bills are improperly denied by insurers and instead paid by Medicare" to bring suit, and "the government is subrogated to the right of the private citizen for the recovery of such funds." 254 F.3d 387, 394 (2d Cir. 2001) (citing 42 U.S.C. § 1395y(b)(3)(A) and (b)(2)(B)(iii)).

B.    **The Instant Action**

In the complaint, plaintiff alleges that Empire is a private health insurer contracted by HHS as both a Medicare carrier and fiscal intermediary. (Compl. ¶ 4.) Part of Empire's duties is to ensure that the Medicare program is not billed for and does not pay claims that are primarily covered by another private insurance plan. (*Id*. at ¶ 5.) Plaintiff further alleges that Empire "failed to collect

4

monies owed to the Medicare system by other responsible entities in accordance with its responsibilities as a carrier/intermediary and pursuant to the MSP statute." (*Id*. at ¶ 7.) Additionally, Empire, "in its role as a private health insurer was, itself, responsible for a significant portion of the unpaid MSP monies." (*Id*. at ¶ 8.) Defendants raise several grounds for dismissal of plaintiff's complaint, which will be discussed in more detail below.

## II. Discussion

### A. Standard For Motion To Dismiss

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court accepts as true all factual allegations in the complaint. *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, "inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). A case is properly dismissed under Rule 12(b)(1) when "the district court lacks statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). It is the plaintiff's burden to prove subject matter jurisdiction "by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court also accepts as true all well-pleaded factual allegations, but, in contrast to a Rule 12(b)(1) motion, draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth half a century ago in *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. The

Court "retire[d]" *Conley's* "no set of facts" language in favor of the requirement that plaintiff plead enough facts to "state a claim for relief that is plausible on its face." *Bell Atl. Corp.*, 127 S. Ct. at 1974.

The Second Circuit has not interpreted the foregoing language to require a "universal standard of heightened fact pleading;" rather, it requires a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007). However, *Bell Atlantic* holds that:

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact).

127 S. Ct. at 1964-65 (citations omitted).

Empire originally moved to dismiss plaintiff's complaint on five grounds: (1) lack of subject matter jurisdiction; (2) lack of standing; (3) immunity defense; (4) *res judicata*; and (5) statute of limitations. With respect to the immunity defense, on November 10, 2005, the United States Attorney for the Eastern District of New York filed a letter requesting that she be given until January 17, 2006 to submit a Statement of Interest. Thereafter, Empire reached an agreement with the United States Attorney's Office whereby the government would not object to dismissal of plaintiff's complaint on any ground other than the immunity defense. By letter dated November 28, 2005, Empire requested that the court disregard its argument for dismissal pursuant to the immunity defense. Because the court holds, however, that plaintiff lacks standing to bring the instant action, the court need not consider Empire's other asserted grounds for dismissal.

B.  **Plaintiff Lacks Standing**[2]

Article III, section 2 of the U.S. Constitution limits federal court jurisdiction to the resolution of "cases" and "controversies." "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 37 (1976). Article III standing requirements "are not mere pleadings requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). These requirements "determin[e] the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).

"[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id*. at 498-99 (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). There are three elements necessary to show the "irreducible constitutional minimum of standing":

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[2]The court notes that Empire brought its challenge to plaintiff's standing under the rubric of Fed. R. Civ. P. 12(b)(6). Courts within the Second Circuit, however, have dismissed for lack of standing under both Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6). *See e.g., Rent Stabilization Ass'n of City of New York v. Dinkins,* 5 F.3d 591, 594 (2d Cir. 1993) (dismissing under 12(b)(6)); *Tasini v. New York Times, Co.,* 184 F. Supp. 2d 350, 354-55 (S.D.N.Y. 2002) (dismissing under 12(b)(1)). Because the court is not required to make any jurisdictional findings of fact in reaching its determination as to plaintiff's standing to bring the instant action, the distinction between 12(b)(1) and 12(b)(6) is immaterial in this case. Plaintiff's complaint must be dismissed under either Rule.

*McCormick v. Sch. Dist. of Mamaroneck,* 370 F.3d 275, 284 (2d Cir. 2004) (quoting *Lujan,* 504 U.S. at 560-61 (internal footnote, citations, and quotation marks omitted)). In addition to these constitutional limitations, there are also prudential limitations on standing which provide, in relevant part, that the federal courts should avoid deciding "generalized grievances" shared by all or a large class of citizens. *Small v. Gen. Nutrition Cos., Inc*. 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005) (citing *Warth,* 422 U.S. at 499-500).

It is clear from plaintiff's complaint that he lacks standing to bring the instant suit under both the constitutional and the prudential standing analyses. Plaintiff does not allege that he is a Medicare recipient. Plaintiff also does not allege that he was an insured person under an Empire insurance policy, nor does he claim that he was denied coverage by Empire under any such policy. Moreover, plaintiff has not asserted that he is over sixty-five years of age, disabled, or suffering from end-stage renal disease. Without any allegations that plaintiff suffered an injury at the hands of Empire, plaintiff's complaint may therefore be properly characterized as a "generalized grievance."

A narrow exception to the standing requirement exists in the case of *qui tam* statutes. A *qui tam* action allows a private citizen to sue on behalf of the federal government, and the government is understood to partially assign its rights to the *qui tam* claim to such a person. *See Vt. Agency of Natural Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 773 (2000). However, there is no common law right to maintain a *qui tam* action; "authority must always be found in legislation." *Conn. Action Now, Inc. v. Roberts Plating Co., Inc.,* 457 F.2d 81, 84 (2d Cir. 1972). The False Claims Act ("FCA") is the best known *qui tam* statute. *See* 31 U.S.C. § 3729 *et seq*.

Even if plaintiff had brought this action on behalf of the United States in the form of a *qui tam* action, which he did not, a large majority of district courts across the country have found that

the MSP statute does not provide for a *qui tam* right of action. *See, e.g.*, *Stalley v. Regency Hosp. Co.*, No. 06 Civ. 5233, 2007 WL 1702574 (W.D.Ark. June 11, 2007); *Stalley v. Adventist Health Sys.*, No. 06 Civ. 2328, 2007 WL 1225385 (M.D.Fla. Apr. 25, 2007); *Brockovich v. Cmty. Med. Ctr., Inc.*, No. 06 Civ. 1609, 2007 WL 738691 (E.D.Cal. Mar. 7, 2007); *Stalley v. Erlanger Health Sys.*, No. 06 Civ. 194, No. 06 Civ. 216, No. 06 Civ. 217, No. 06 Civ. 265, No. 06 Civ. 359, 2007 WL 672301 (E.D.Tenn. Feb. 28, 2007). Although the Second Circuit has yet to definitively rule on the issue of whether the MSP is a *qui tam* statute, the court finds no reason to depart from the well-reasoned conclusions reached by the various district courts, and, therefore, joins in their reasoning.

In finding that the MSP's private right of action does not allow for *qui tam* actions, the other district courts have compared the MSP with the FCA, noting obvious similarities, as well as four dispositive differences. *See Brockovich,* 2007 WL 738691, at *4-5; *Stalley,* 2007 WL 672301, at *3-5. First, although "both statutes allow individual citizens, as well as the government to sue in order to right an economic wrong done to the government," *Manning,* 254 F.3d at 394, the FCA expressly empowers private persons to sue on behalf of the United States,[3] while the MSP provides for two clear and distinct causes of action, one for the government and one for private damages. *Compare* 42 U.S.C. § 1395y(b)(2)(B)(iii) *with* 42 U.S.C. § 1395y(b)(3)(A). Second, the MSP does not contain the important procedural safeguards of a *qui tam* action, namely, that the United States remains the real party in interest. *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.,* 41 F.3d 1032, 1041 (6th Cir. 1994) (the Executive Branch must retain control over a *qui tam* relator

---

[3]Section 3730(b)(1) provides: "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1).

to satisfy the Take Care Clause, U.S. Const. art. II, § 3); *see also Manning,* 254 F.3d at 395 ("Unlike in MSP actions, the government must be allowed to participate in [*qui tam*] actions filed by private individuals, and, if the government so desires, to take over the prosecution of such actions . . . Furthermore, the government can have private FCA suits dismissed even over the objection of the citizen who filed the action, as long as notice and an opportunity for a hearing are provided to the individual citizen. . . ."). Third, the MSP permits a private plaintiff to recover double damages and subrogates the federal claim to the individual's claim, s*ee* 42 U.S.C. § 1395y(b)(2)(B)(iv), whereas in a true *qui tam* action, the relator receives a portion or percentage of the government's recovery. *Stalley,* 2007 WL 672301, at *4. Finally, the legislative history of the 1986 amendment is evidence that Congress did not intend the MSP to be a *qui tam* statute because, only ten days after amending the FCA to add explicit *qui tam* provisions and safeguards, Congress amended the MSP to add an explicit private right of action without such provisions. *Id*. (citing 1986 U.S.C.C.A.N. 3868, 5266 (1986)). *Compare* Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9319, 100 Stat. 1874 (1986) *with* False Claims Amendments Act 1986, Pub.L. No. 99-562, 100 Stat. 3153 (1986).

Accordingly, the court agrees with its sister courts that the MSP is not a *qui tam* statute. Therefore, plaintiff lacks standing on his own behalf, as well as on behalf of the United States.

## III. Conclusion

For the reasons set forth above, Empire's motion is granted. Plaintiff's complaint is dismissed with prejudice and the Clerk of the Court is directed to close this case.

SO ORDERED.

DATED:     Brooklyn, New York
                August 20, 2007

                                      _____/s/_____
                                        DORA L. IRIZARRY
                                   United States District Judge